## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREG KIDA, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ECOWATER SYSTEMS LLC, et al. | : | NO. 10-4319 |

### MEMORANDUM RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**Baylson, J.**                                                                          **September 30, 2011**

### I.      Introduction

Judges generally avoid deciding motions based on procedural failures of counsel.  The

decided preference is to ignore those procedural defaults which have not caused prejudice to

another side, and to adjudicate motions based on substantive rules of law.  This policy is, at its

most fundamental level, a fair approach to make sure that the parties achieve justice and that the

faults of lawyers do not affect the substantive rights of their clients.

In this products liability action, EcoWater Systems LLC and Sears, Roebuck & Co.

(collectively, "Defendants") seek summary judgment on the claims brought by Greg Kida and

Sophia Kida (collectively, "Plaintiffs") relating to the malfunction of a water filtration system.

### II.      Factual and Procedural History

Plaintiffs filed suit in the Court of Common Pleas of Philadelphia, July 2010, No.

001944.  On August 25, 2010, Defendants removed the case to federal court on the basis of

diversity jurisdiction.  Not. Removal (ECF No. 1).  On September 16, 2010, Plaintiffs filed an

Amended Complaint (ECF No. 3), which alleged Negligence (Count I), Strict Liability (Count

II), Res Ipsa Loquitor (Count III), and Breach of Warranty (Count IV).

Plaintiffs allege they are New Jersey residents who own real and personal property at 404 Lakeview Street, Lakeville, Pennsylvania 18438 ("the Lakeville Property").  Am. Compl. ¶ 3 (ECF No. 3).

Plaintiffs allege that Defendants "were engaged in the business of designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling, and/or supplying, among other things, water filters, water filtration systems, accumulator tanks, and other water service products."  Id. at ¶ 10.   Plaintiffs had installed in the Lakeville Property kitchen "a water filter, water filtration system, accumulator tank, and/or other water service product."  Id. at ¶ 12.  The water filter was a Kenmore product.  Id. at ¶ 19.  Sears Roebuck & Co. is a corporate parent of Kenmore.  Id. at ¶ 6.

Defendants allegedly designed, manufactured, and sold the water filter system in a defective, dangerous, and/or hazardous condition, and failed to warn of the dangerous or hazardous condition.  Id. at ¶¶ 21-22.  The malfunction of the water filtration system caused extensive flooding in and property damage to the Lakeville Property.  Id. at ¶¶ 14-18.

Defendants moved for summary judgment on August 12, 2011 (ECF No. 25).  Plaintiffs responded on August 30, 2011 (ECF No. 26), and Defendants replied on September 9, 2011 (ECF No. 27).

III.   **Legal Standards**

   A.   **Jurisdiction**

The Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332. Plaintiffs are residents of New Jersey.  Am. Compl. ¶¶ 1-2.  Defendant Ecowater Systems, LLC, is a Minnesota citizen, and Defendant Sears Roebuck & Co. is an Illinois citizen.  Am. Compl. ¶¶

4-5.   The amount in controversy is in excess of $75,000, as Plaintiffs seek recovery in excess of $50,000 for each count.

> **B.      Summary Judgment**

Summary judgment is appropriate if the movant can show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).[1]  A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law.  Id.

Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  Under Rule 56, the Court must view the evidence presented on the motion in the

---

[1] Because this civil action was pending when the Amendments to the Federal Rules Of Civil Procedure became effective on December 1, 2010, the Court references the amended summary judgment standard in Fed. R. Civ. P. 56(a), which substitutes "genuine dispute" for "genuine issue," the phrase in former subdivision (c).  The Rules Advisory Committee explained that the 2010 Amendments do not affect the substantive standard for summary judgment or the applicability of prior decisions construing the standard.  Fed. R. Civ. P. 56 Advisory Committee's Note.  Pursuant to 28 U.S.C. § 2074(a) and the April 28, 2010 Supreme Court order, the amended rule governs all proceedings commenced on or after December 1, 2010, and all proceedings then pending, "insofar as just and practicable."  United States Courts, Rules and Forms in Effect: Rules and Forms Amendments Effective 12/1/10, http://www.uscourts.gov/RulesAndPolicies/FederalRulemaking/Overview/RulesForms120110.as px (last visited Apr. 5, 2011).

light most favorable to the opposing party.  <u>Anderson</u>, 477 U.S. at 255.

## IV.      The Parties' Contentions

Defendants contend that, based on the evidence in the record, including matters deemed admitted in their unanswered Requests for Admission, there is no genuine dispute of material fact and Defendants are entitled to judgment as a matter of law on Plaintiffs' claims.  Defendants assert that Plaintiffs have admitted the water filter system failed because of mishandling during installation or servicing by a third party, not because of a flaw or defect attributable to either Defendant.

Plaintiffs respond that Defendants failed to follow Local Rule 26.1(f) and this Court's pre-trial procedures to attempt to resolve discovery matters in good faith.  Plaintiffs contend that the motion should be denied for this reason, or in the alternative, seek leave to submit untimely responses.  Plaintiffs further contend that summary judgment should not be granted because the parties have had other discovery disputes.  Lastly, Plaintiffs assert there is a genuine dispute of material fact created by Plaintiffs' expert report filed by Dr. Antoine Rios ("Dr. Rios"), who concluded that the water filtration system failed due to manufacturing and design defects.

Defendants reply that Rule 36 does not impose a meet and confer requirement and that any other discovery disputes the parties had are not relevant to whether the unanswered Requests for Admission are admitted.  Furthermore, Defendants contend that the opinion of Dr. Rios did not create a material issue of fact, because Dr. Rios made conclusory statements about the existence of defects.  Lastly, Defendants assert that Plaintiffs submitted no evidence to support a distribution or marketing defect claim.

**V.      Discussion**

Defendants move for summary judgment on all of Plaintiffs' claims.  Because the Court

has diversity jurisdiction, we apply Pennsylvania law to the facts of the case.  Erie R.R. Co. v.

Tompkins, 304 U.S. 64 (1938).  Plaintiffs have alleged three independent causes of action.[2]

Count I is a claim for negligence.  Under Pennsylvania law, a plaintiff must prove four

elements to prevail on a negligence claim: "(1) a duty or obligation recognized by the law,

requiring the actor to conform to a certain standard of conduct for the protection of others against

unreasonable risks; (2) a failure to conform to the standard required; (3) a causal connection

between the conduct and the resulting injury; and (4) actual loss or damage resulting in harm to

the interests of another."  Northwestern Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 139 (3d

Cir. 2005) (citing In re TMI, 67 F.3d 1103, 1117 (3d Cir. 1995)).

 Count II is a claim for strict liability due to manufacturing or design defect.  To prevail

on a strict liability theory, the plaintiff "must show that: (1) 'the product was defective;' (2) 'the

defect was a proximate cause of the plaintiff's injuries;' and (3) 'the defect causing the injury

existed at the time the product left the seller's hands.'"  Bruesewitz v. Wyeth Inc., 561 F.3d 233,

255 (3d Cir. 2009), aff'd, 131 S. Ct. 1068 (2011) (quoting Berkebile v. Brantly Helicopter Corp.,

337 A.2d 893, 898 (Pa. 1975)) (affirming district court's grant of summary judgment for

---

[2] Plaintiffs also raised "res ipsa loquitor" as Count III.  However, res ipsa loquitor is not an independent cause of action but rather "a shorthand expression for circumstantial proof of negligence-a rule of evidence." Jones v. Harrisburg Polyclinic Hosp., 437 A.2d 1134, 1137 (Pa. 1981) (quoting Gilbert v. Korvette, Inc., 327 A.2d 94, 99 (Pa. 1974)).  See also Tennis v. Ford Motor Co., 730 F. Supp. 2d 437, 449-50 (W.D. Pa. 2010) (McVerry, J.) (holding that "res ipsa loquitur is a rule of evidence and not a separate cause of action" under Pennsylvania law). Therefore, the Court does not consider Count III.

defendant on manufacturing and warning defect claims because plaintiffs failed to establish evidence in their favor).[3]  A product has a defect "if it 'left the supplier's control lacking any element necessary to make it safe for its intended use.'"  Forrest v. Beloit Corp., 424 F.3d 344, 357 (3d Cir. 2005) (quoting Lewis v. Coffing Hoist Div., Duff-Norton Co., 528 A.2d 590, 593 (Pa. 1987)).

Count IV is a breach of warranty claim.  There is no evidence on the record as to this claim.  Plaintiffs have not submitted evidence of the existence of an express warranty, nor did they submit evidence to support recovery on a theory of breach of implied warranty.[4]  Therefore, the Court will grant summary judgment to Defendants on Count IV.

## VI.   Defendants' Requests for Admissions to Plaintiffs

### A.   Requests for Admissions

---

[3] Section 402A of the Restatement (Second) of Torts, adopted by Pennsylvania's Supreme Court, governs strict product liability claims.  Pacheco v. Coats Co., Inc., 26 F.3d 418, 421 (3d Cir. 1994) (citing Webb v. Zern, 220 A.2d 853, 854 (Pa. 1966)).  Section 402A provides in relevant part:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
> (a) the seller is engaged in the business of selling such a product, and
> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

[4] "An implied warranty of fitness for a particular purpose applies '[w]hen the seller at the time of contracting has reason to know: (1) any particular purpose for which goods are required; and (2) that the buyer is relying on the skill or judgment of the seller to select or furnish suitable goods.'"  Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1309 (3d Cir. 1995) (quoting 13 Pa. Cons. Stat. Ann. § 2315 (1984)).  An implied warranty of merchantability "requires that the product be 'fit for the ordinary purposes for which such goods are used.'"  Id. (quoting 13 Pa. Cons. Stat. Ann. § 2314(b)(3) (1984)).  A plaintiff must also prove the product was defective.  Id. (citing Altronics of Bethlehem, Inc. v. Repco, Inc., 957 F.2d 1102, 1105 (3d Cir. 1992)).

Pursuant to Fed. R. Civ. P. 36, a party may serve written requests for admission on another party concerning the truth of discoverable matters.  A matter admitted under Rule 36 is "conclusively admitted" in that proceeding unless the court grants a motion to withdraw or amend its admission.  Fed. R. Civ. P. 36(b).  The answering party has 30 days after being served in which to serve its written answer or objection to the requesting party; otherwise, the matter is deemed admitted.  Fed. R. Civ. P. 36(a)(3).

The Third Circuit has held that an admission of facts under Rule 36 "is not merely another layer of evidence, upon which the district court can superimpose its own assessment of weight and validity," but rather is an "unassailable statement of fact that narrows the triable issues in the case."  Airco Indus. Gases, Inc. v. Teamsters Health & Welfare Pen. Fund, 850 F.2d 1028, 1037 (3d Cir. 1988) (holding that district court's factual finding, which contradicted a party admission, was clearly erroneous); see also McSparran v. Hanigan, 225 F. Supp. 628 (E.D. Pa. 1963) (Freedman, J.), aff'd sub nom. McSparran v. Subers, 356 F.2d 983 (3rd Cir. 1966) (granting defendant's motion for judgment notwithstanding the verdict where an "issue [that] had been removed from controversy by plaintiff's admission of [defendant]'s request" was submitted to the jury in error).

The Third Circuit has held that Rule 36 admissions are "conclusive" and "sufficient to support summary judgment."  Langer v. Monarch Life Ins. Co., 966 F.2d 786, 803 (3d Cir. 1992) (citation omitted) (holding in part that district court erred in reading defendant's binding admissions too broadly).  An admission established by default (i.e., a party's failure to respond to a request for admission) is likewise conclusive pursuant to Rule 36.  For example, in McNeil v. AT&T Universal Card, 192 F.R.D. 492, 493 (E.D. Pa. 2000) (Reed, J.), the defendant in a

7

negligence suit moved for summary judgment on plaintiffs' claims after plaintiffs failed to respond to a request for admission, which "asked plaintiffs whether they admit that they were unaware of any facts that would support" certain allegations in the complaint. Id. at 493-94. Judge Reed deemed the request admitted, which conclusively established that plaintiffs lacked factual support for their claims. Id. at 494. The admissions "carr[ied] more weight than a witness statement, deposition testimony, or interrogatories, because once made, admissions cannot be countered by other evidence." Id. at 494 n. 4. Therefore, Judge Reed held that there was no genuine issue of material fact whether the defendant was negligent, and the defendant was entitled to judgment as a matter of law. Id. at 494. Similarly, in Jackson v. Riley Stoker Corp., 57 F.R.D. 120 (E.D. Pa. 1972) (Newcomer, J.), the defendant served requests for admission on the plaintiff concerning the truth of certain facts and the authenticity of certain documents in a contract dispute. Id. at 121. Based on the plaintiff's failure to respond, Judge Newcomer found that the plaintiff had "admitted that there is no dispute as to such facts and documents," which supported the defendant's affirmative defense of release. Id. at 121-22 (citation omitted) (granting defendant's motion for summary judgment).

Because admissions are conclusive, they are not weighed against competing evidence on a summary judgment motion. As the Fifth Circuit explained, "[s]ince Rule 36 admissions, whether express or by default, are conclusive as to the matters admitted, they cannot be overcome at the summary judgement [sic] stage by contradictory affidavit testimony or other evidence in the summary judgment record." In re Carney, 258 F.3d 415, 420 (5th Cir. 2001) (affirming grant of summary judgment for defendant where the "validity of the tax deficiencies stated in the IRS's proof of claim has been conclusively established" by default admissions). See also Cook v.

Allstate Ins. Co., 337 F. Supp. 2d 1206, 1211 (C.D. Cal. 2004) (Fischer, J.) (granting defendant

insurance company's motion for summary judgment on plaintiffs' breach of contract claim, and

relying on default admissions by plaintiff in support of the motion).

When a plaintiff responds to a request for admission after the response deadline has

passed, the court has discretion to admit the untimely answer if doing so would aid the resolution

of the case on the merits and would not prejudice the requesting party. Flohr v. Pa. Power &

Light Co., 821 F. Supp. 301, 306 (E.D. Pa. 1993) (Huyett, J.) (admitting defendants' untimely

responses after finding that plaintiffs failed to show detrimental reliance on the admissions or

serious prejudice by defendant's untimely answers, and that permitting the filing of untimely

answers would aid in resolving the summary judgment motion). See also Pritchard v. Dow Agro

Scis., 255 F.R.D.164, 173 (W.D. Pa. 2009) (Fischer, J.) (finding that "the merits of the case will

be promoted by allowing Plaintiffs to withdraw their admissions and proceed," and

distinguishing cases where parties requested to amend or withdraw admissions by default at a

later procedural stage).

### B.     Plaintiffs' Request for Admissions

 In this case, Defendants served 22 Requests for Admission on Plaintiffs through their

counsel via electronic mail on June 29, 2011. See Ex. A to Defs.' Mot. Summ. J.  Plaintiffs'

responses were due August 1, 2011.[5]

The Requests for Admission were grounded in the conclusions of a third-party engineer,

---

[5] See Fed. R. Civ. P. 36(a)(3) (providing thirty days after service in which to answer or object to the requests for admission); Fed. R. Civ. P. 6(d) (adding 3 days to the response time after electronic service pursuant to Rule 5(b)(2)(E)).

Terence Duvall ("Duvall"), who prepared a report for Allstate, Plaintiffs' insurance company, to "determine the cause of the loss."  Duvall Report, dated May 27, 2009 (Ex. B to Defs.' Mot. Summ. J.), at 1.  Duvall found that the source of the leak was a Kenmore water filter.  Id.  The socket in the filter assembly was broken.  Id.  Duvall found that "[t]he break and the poor accessibility under the sink, furthest from the cabinet opening, indicates that the filter cartridge was pulled and broke or cracked the socket mount, resulting i[n] a later failure."  Id.  He further found that "[t]he break in the socket mount shows no evidence of a flaw or crack" and "no evidence of a manufacturing defect."  Id. at 2.  Rather, the evidence showed "rough handling installing or removing" the cartridge, which caused the leak.  Id.

Defendants' Requests for Admission were based on Duvall's findings.  Among other requests, Defendants asked Plaintiffs to admit or deny that the break in the water filter system showed no evidence of a flaw; that rough handling damaged the socket mount and led to the failure of the water filter system; that there was no evidence of a manufacturing defect in the water filter system; and that there was no evidence of a flaw or crack in the plastic of the water filter system.  Request Nos. 16-19.  Because Plaintiffs did not respond in a timely manner, these matters addressed in the requests were admitted by default, and "conclusively established" pursuant to Fed. R. Civ. P. 36(b).

The Request for Admission No. 1 asks the Plaintiffs to admit that they did not know the precise date when the loss occurred, which Plaintiffs admitted.  Plaintiffs also admitted Requests 2 - 5, which establish that Allstate had identified the date of loss as February 10, 2009, that the water filter system had been used in "your residence" for at least seven years at the time of loss, that the residence in question was "your secondary residence" and that "your primary residence

did not sustain any damage as a result of the accident."

As to Request No. 6, which asks Plaintiffs to admit that remediation work did not start at the residence until after June 2009, Plaintiffs responded "denied.  We attempted to begin repairs to the property, including remediation, as soon as we discovered the damage."

Plaintiffs filed objections to Request Nos. 7 - 13, and 20 -21, which are discussed below.

Plaintiffs admitted Request No. 14, which states that "no one, to your knowledge, was at the residence from January 20, 2009 until March 28, 2009.

Request Nos. 15 - 19 are denied with explanations and also discussed below.

## C.     Plaintiffs Failed to Timely Respond

Plaintiffs did not respond at all within the thirty days allowed under the Rule.  In fact, Plaintiffs did not make any response until after the Defendants had filed their Motion for Summary Judgment on August 12, 2011.  In their response to the Motion for Summary Judgment filed on August 30, 2011, Plaintiffs asked the Court to consider their responses to the Requests, which were attached to Plaintiffs' response to the Motion for Summary Judgment.

Aside from the late nature of the response,[6] if the only lapse in this case had been the failure to timely respond to the Requests for Admissions, the Court may have forgiven the oversight and accepted the Plaintiffs' responses, even though untimely. However, several of Plaintiffs' responses, particularly the objections, are asserted in bad faith.

## D.     Plaintiffs' Responses

The Court has reviewed above a summary of the Plaintiffs' responses.  However, several

---

[6]Plaintiffs point out that the Defendants had not timely responded to Plaintiffs' discovery, and Plaintiffs granted extensions upon being asked.  Plaintiffs never filed a Motion to Compel, and it appears that Defendant eventually supplied all of the requested discovery.

of the responses are asserted in fad faith, in particular the Objections.  As noted above, Plaintiffs

brought this suit alleging they were New Jersey residents and did not dispute the removal of this

case to this Court based on diversity jurisdiction.  In doing so, Plaintiffs admitted that New

Jersey was their primary residence.  By definition, a property that they own in Pennsylvania

cannot be their primary residence.  Nonetheless, Plaintiffs asserted that several Requests for

objectionable because the Requests did not specify as to whether the Admissions were directed

towards the Plaintiffs' "primary or secondary" residence.  This objection is in bad faith.  Indeed,

Plaintiffs admitted in their response to Request No. 4 that "the residence in question was your

secondary residence."  Therefore, the objections put forth in responses to Requests Nos. 7 - 13

and 20 - 21 are asserted in bad faith.  Thus, Plaintiffs were simply avoiding admitting Requests

Nos. 7 - 13 and 20 - 21.

The admission that the residence, which is the subject matter of the Complaint, was the

secondary residence in Pennsylvania is also consistent with Plaintiffs' representation in their

Motion to Quash Defendant's Subpoena, which this Court previously resolved, that the damaged

property is Plaintiffs' "second-home." (ECF No. 18)

Plaintiffs do give a substantive response to Admission Nos. 15 - 19, which are based on

the report of their expert, Dr. Rios (discussed below).

Furthermore, Plaintiffs also asserted that summary judgment based on Defendants'

Requests for Admissions should be denied because Defendants failed to "meet and confer."

Plaintiffs raise a specious argument that Defendants had a duty to meet and confer about the

unanswered requests for admission before moving for summary judgment, an argument not

supported by the federal rules or any case precedent.

The breach of the discovery rules was by Plaintiffs, not by Defendants.  If Plaintiffs had

served timely objections, either party would have had a duty to "meet and confer" before filing a

motion based on the objections.  But where the objections were untimely, indeed one month late,

the Defendants had no duty to meet and confer.  If anything, Plaintiffs had an obligation to seek

agreement from Defendants to submit responses on an untimely basis.

The position taken by Plaintiffs' counsel, in the responses that were finally filed,

represents a gross violation or misunderstanding of the discovery rules.  If a misunderstanding, it

could have been avoided by a careful reading of the rules, and any of the substantial case law

explaining the rules.  Plaintiffs did not file a motion for leave to withdraw or amend their

admissions, and explain the reasons.  Plaintiffs only ask the Court, in their opposition to

summary judgment, to accept their untimely objections and answers. Ex. C to Pls.' Resp. (ECF

No. 26-2).  The Court declines to do so at this time.

Thus, the Court is left with a situation in which the Plaintiffs not only were very late in

responding to the Requests for Admissions, but asserted specious objections.  As a result, the

Court is bound to consider the Admissions as "deemed admitted" under settled case law.

Plaintiffs failed to respond to Defendants' requests for admission concerning the absence of

evidence of a manufacturing defect or flaw in the water filter system, the finding of evidence of

mishandling by a third party during installation or removal of a component part, and related

matters.

### E.      Causation

Considering the facts in the light most favorable to the non-moving party, the inference

drawn from the above admissions, in conjunction with Plaintiffs' Responses to Defendants'

Interrogatories, is that any defect in the water filter system was not caused by Defendants.

Plaintiffs responded to the interrogatories that a third party, Bob Holiday Builders, installed the

water filter system, and that the water filter system was never serviced, maintained, or repaired.

Pls.' Resp. to Defs.' Interrogs. Nos. 9, 10, Ex. D to Defs.' Mot. Summ J.  (ECF No. 25-4)

Therefore, any damage caused by rough handling during installation or servicing is not

attributable to Defendants.

Plaintiffs suggest that the report of Dr. Rios establishes a genuine dispute of fact as to

causation.  Dr. Rios examined the evidence collected by Duvall and concluded that failure of the

water filter's "mounting collar," due to "longitudinal force [that] created a stress that exceeded

the material's strength," caused the leak.  Rios Report, dated Nov. 10, 2009 (ECF No. 26-2), at 2,

4.  Dr. Rios found that the "failed mounting collar is installed by the manufacturer" and that "the

root cause of failure is a defective design of the filter."  Id. at 7.  However, Plaintiffs stated the

builder installed the unit, as noted above.

Plaintiffs contend this report is sufficient evidence for a reasonable jury to conclude that

Defendants' conduct caused Plaintiffs' injury.  However, Dr. Rios's report is not competent for

consideration on summary judgment because it is not sworn.  The Third Circuit has held that the

substance of a purported expert's report must be sworn to by the expert to be considered on a

motion for summary judgment.  Fowle v. C & C Cola, a Div. of ITT-Continental Baking Co.,

868 F.2d 59, 67 (3d Cir. 1989).  This requirement is in conformity with Rule 56, which states:

"An affidavit or declaration used to support or oppose a motion must be made on personal

knowledge, set out facts that would be admissible in evidence, and show that the affiant or

declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  See also Fowle,

868 F.2d at 67 (considering summary judgment motion without reference to expert report that failed to comply with former Rule 56(e)).

Even if Dr. Rios's report were competent evidence, it is insufficient to counter the admissions with an expert report.  See In re Carney, 258 F.3d at 420 (admission "cannot be overcome at the summary judgement stage by . . . other evidence in the summary judgment record"); McNeil, 192 F.R.D. at 494 ("once made, admissions cannot be countered by other evidence"); McSparran, 225 F. Supp. at 636 (an admission "foreclosed any dispute at the trial regarding its truth").  Therefore, the admissions that there was no evidence of a manufacturing defect or flaw and that the injury was caused by mishandling during installation or removal serves as an uncontroverted basis for summary judgment on Plaintiffs' negligence and strict liability claims.

## VII.    Conclusion

The Court will hold a hearing to give Plaintiffs' counsel an opportunity to show why the Defendants' Motion for Summary Judgment should not be granted.  Plaintiffs' counsel is advised that sanctions may be imposed for the discovery conduct reviewed above.

An appropriate Order follows.


O:\CIVIL 09-10\10-4319 Kida v Ecowater\Kida - Mem MSJ.wpd